Rockingham,
No. 5510.

N. J. Scott Excavating & Wrecking, Inc.

*v.*

James R. Rosencrantz.

Argued October 5, 1966.
Decided October 31, 1966.

*Shute & Engel ( Mr. David C. Engel* orally ) for the plaintiff.

*George R. Scammon* and *Robert G. Whitman ( Mr. Whitman* orally ) for the defendant.

Duncan, J. Under date of May 9, 1962, the parties entered

into an agreement of conditional sale of the equipment in question for a total price of $11,500. The plaintiff traded in a smaller tractor for which $4,000 was credited against the purchase price, and executed a note for $8,918.28 for the unpaid balance and finance charges, payable in 36 installments at the rate of $247.73 per month commencing June 9, 1962. The defendant assigned the contract, without recourse, to John Deere Company on the same day.

The contract authorized the holder to declare the entire balance due and payable on default in payment of any installment, and to repossess the goods upon default. The warranty contained in the contract provided in part as follows:

" Seller warrants each new John Deere machine to be free from defects in materials or workmanship. The obligation of Seller under this warranty is limited to replacing parts which, in Seller's judgment, prove defective with normal and proper use within a period of 6 months from date of delivery to Purchaser. In no event shall Seller be liable for loss of crops or other consequential damages.

" The above warranty is in lieu of all other warranties, statutory or otherwise, express or implied, including any implied warranties of merchantability which may be construed to go beyond the above warranty, all other representations to Purchaser, and all other obligations or liabilities with respect to such machines. No warranty or representation whatsoever has been made by the manufacturer or wholesale distributor of John Deere machines and relied on by Purchaser, and Seller has no authority to make any such warranty or representation on behalf of such manufacturer or wholesale distributor. "

Prior to purchase, the plaintiff was permitted to try out the equipment for a period of a week, in the course of construction work in which it was engaged. There was evidence on behalf of the defendant that the equipment was a " demonstrator unit, " never before sold to a customer, and that a price concession was made on that account.

Between May and August, 1962, the plaintiff encountered various difficulties with the equipment, some of which the defendant sought to remedy, and others of which the plaintiff had repaired by third persons, findably so that the equipment could be kept on the job. At one time or another, there was a stick in a front tire, the arms of the front loader bucket pulled loose

where welded, a bucket split, and the boom of the loader broke. Finally the hydraulic lift system failed to operate properly. The plaintiff complained of the latter defect while the equipment was being used in Lawrence, Massachusetts, in early August. On August 18, 1962, he advised both the defendant and John Deere Company by letter that he did "not intend to pay on this account until this machine is replaced."

It was not disputed that on August 24, 1962, the equipment was moved to the defendant's place of business in Kensington for repairs. The defendant testified that on the same day he was instructed by John Deere Company to hold the equipment in its name, and that it was thereafter resold. He also testified that the failure of the hydraulic equipment to operate properly was found to be due to a clogged oil filter, which was a matter of operating maintenance rather than any defect in the equipment.

The purchase price installment due on June 9, 1962, was paid by the plaintiff on June 17, 1962, and the July payment was made on July 6, 1962. The payment due on August 9, 1962, was not made, nor were other payments made or tendered, although the plaintiff testified that he intended to make them once "something was done."

Findings and rulings in writing were not requested by the parties, and none were made. A review of the record in the case establishes that the Court could reasonably find that the evidence failed to establish any breach of agreement by the defendant. The question of whether the equipment was a "new John Deere machine" within the meaning of the warranty was one of fact, as was the question of whether the equipment was "free from defects in materials or workmanship." In any event, the defendant's liability for breach of warranty was limited to replacement of parts which proved defective with proper and normal use. This likewise presented questions of fact for the Trial Court.

The plaintiff argues that the evidence of conversion of the equipment by the defendant was uncontroverted, and that a verdict for the plaintiff was required as a matter of law. It is true that the defendant did not deny that the equipment was delivered to him on August 24 for the purpose of repairs, and testified that he told the plaintiff that he would "bring it back as quick as possible." There was evidence that the defendant never notified the plaintiff of any purpose to repossess the equipment for default

under the contract. However, so far as the record shows the right of repossession for default was the right of the assignee John Deere Company, and in dealing with the equipment after August 24, 1962, the defendant acted for the assignee.

The plaintiff argues that the defendant obtained possession of the equipment by fraud and deceit, and false representation that it was being taken for repairs, and that common law rather than statute should govern the rights of the parties. See RSA 382-A:1-103. In support of his argument that the defendant's failure to return the equipment was a conversion, he relies upon *Walker* v. *Ayers*, 47 Ga. App. 113. See 1 Coogan, Secured Transactions under U.C.C., *s*. 8.03. We do not find the Georgia case apposite.

Under the provisions of the Uniform Commercial Code (first effective in Georgia in 1964, see RSA ch. 3-A, *p*. 610 Table III) John Deere Company, as "secured party" was entitled "on default . . . to take possession of the collateral [and to] proceed without judicial process . . . ." RSA 382-A:9-503. See 5 N.H.B.J. 181, 197 et seq. Since its rights as assignee were superior to those of the plaintiff, surrender of the equipment to the John Deere Company by the defendant was not a conversion. 4 Williston, Contracts (Rev. *ed.*) *s*. 1036.

There was no evidence that the assignee, John Deere Company, was instrumental in the defendant's obtaining possession of the equipment for the purpose of making repairs. The defendant testified that after the equipment was taken to his shop and on the same day, he received instructions from the assignee, by telephone, to hold the equipment in the assignee's right. If the circumstances would admit of suspicion that subterfuge by the vendor gave to the assignee the victory of repossession, in a typical "battle waged on both sides with cunning guile and a complete disregard for the rules of fair play" (2 Gilmore, Security Interests in Personal Property (1965) *s*. 44.1, *p*. 1212), the evidence did not compel a finding that this was so.

Nor did it compel a finding that the plaintiff's default was justified or excused by reason of a prior breach of warranty. *Cf. Foodmaster, Inc.* v. *Moyer*, 101 N. H. 298. See RSA 382-A:9-206, N. H. Comments. The operating deficiencies of the equipment were findably due to faulty operating maintenance chargeable to the plaintiff, rather than to any defect in material

or workmanship chargeable to the defendant.
The order is

*Exception overruled.*

All concurred.